Patrick J. Picariello, J.
Defendant moves to set aside the jury’s verdict as against the law and the evidence, and “ because of the way the verdict was rendered
*2 In view of the latter contention urged by the defendant, it behooves the court to recount the colloquy which took place in the courtroom both before and after the jury returned with its verdict.
(The Jury returned to the courtroom, at which time the following occurred:)
the court: You have a request?
the foreman: We are at a loss, since we have a difference of opinion as to your charge. Some maintain-
the court: Just what portion of the charge is there a difference of opinion on?
the foreman: Whether or not it can be broken down into a degree of guilt or-
fifth juror: On awarding of the amount-
the foreman: No, no. I forget the word you used.
the court: Are you referring to contributory negligence?
the foreman: Yes. Can it be determined on the degree of negligence, or must it be absolutely on one side or the other?
the court: If you find that the plaintiff in this case was in any way negligent, then you must find a verdict for the defendant.
the foreman: If we find that the defendant was in any way negligent?
the court: No. You must find that the defendant was negligent.
the foreman: Was negligent?
the court: Was negligent in the manner in which it maintained the subway stairway.
the foreman: But there is no degree?
the court: Was negligent, period. I have already described to you what we mean by negligence. However, notwithstanding the defendant’s negligence, if you so find, should you find that the plaintiff was in any wise negligent, in other words, if her conduct was not that of a careful and prudent person in descending the stairs, and if her conduct in any way contributed to the happening of the accident, no matter how slight it might have been, then you must dismiss the complaint.
the foreman : It is clear to me, sir, because that was my contention.
the court: Suppose I read to you that portion of my charge which has to do with the plaintiff’s contributory negligence. * * *
THE JURY RENDERS ITS VERDICT:
court officer: Mr. Foreman, have you reached a verdict?
MR. foreman: We did reach a verdict.
court officer: What is that verdict?
the foreman: We found in favor of the plaintiff.
court officer: And the amount?
the foreman: It was decided upon by the jury, an average method — the lady, I am sorry, I can’t recall her name.
the court: Just tell us the results.
the foreman: $3,000 for her.
the court: Yes.
the foreman : $500 for the gentleman.
mr. mannes: May I have the jury polled?
(The jury was polled. The verdict was unanimous.)
*3 court officer : So say all of you.
MR. mannes: Your Honor, please, having heard the Foreman render his verdict, I believe it would be incumbent upon the court to have the Foreman state again whether it was his report that there was an average verdict — it was done by averaging.
the court: Is that the way the verdict was arrived at?
the foreman : No, sir. The verdict was not arrived at by averaging. The amount of money was arrived at by averaging.
mr. mannes : That is what I thought. Thank you very much.
the court: Thank you very much, ladies and gentlemen. You have discharged your duties.
the foreman : The verdict was unanimous.
the court: It is quite obvious.
(The jury left.)
mr. mannes: For the record: first, generally, the defendant moves to set aside the verdict pursuant to all the sections of the CPLR except as to inadequacy. As to that, I move for setting aside the verdict as excessive, more particularly in view of the jury’s rendering of the report; and then, in the requestioning of the jury by the court at my request on behalf of the defendant, in view of the fact that that was made by averaging, it certainly was irregular — something a jury is not either permitted to do or should do —which is an indication — strictly in view of the fact of the timing, their questioning — it indicates nothing more than sympathy and a compromise verdict, and this is not the proper way in which a verdict should be arrived at. It was not arrived at on the actual merits of the ease, upon which they should really have arrived at it — either yes or no.
In view of that, I move to set aside the verdict as against the law and the evidence, and because of the way the verdict was rendered.
The court shall first proceed to consider the contention raised by the defendant that the verdict was compromised.
A compromise verdict is one which is reached only by the surrender of conscientious convictions on one material issue by some jurors in return for a relinquishment of matters in their like settled opinion on another issue, and the result is one which does not hold the approval of the entire panel. (North British & Mercantile Ins. Co. v. Parnell, 53 Ga. App. 178.) So that, while jurors may properly give great weight to the opinions of other jurors, and may make reasonable concessions as a result of argument and persuasion, a verdict arrived at by their surrender of conscientious convictions upon a material question by some of the jurors in return for a like surrender by others is a “ compromise verdict ” and invalid. (Simmons v. Fish, 210 Mass. 563.)
Apart from the consideration that the foreman indicated in answer to the question posed by the court that “the verdict was not arrived at by averaging. The amount of money was arrived at by averaging ’ ’ there is nothing in the rendition of *4 the verdict, or in the verdict itself, which even remotely suggests a compromise.
Since the deliberations of jurors are secret and have always been considered sacrosanct in perpetuating our form of jurisprudence, as indeed they should bé, and, ordinarily cannot be shown by jurors’ testimony nor can jury rooms be invaded to show that verdict rendered was indeed a compromise, the question arises, well then, how can a compromise verdict be detected and set aside?
Patently, when the verdict is irreconcilably inconsistent. (Leonard v. Home Owners' Loan Corp., 270 App. Div. 363, 270 App. Div. 785, 270 App. Div. 867, affd. 297 N. Y. 103; see, also, Reilly v. Shapmar Realty Corp., 179 Misc. 614, revd. 267 App. Div. 198; Zittrer v. Pitkin Douglass Corp., 29 N. Y. S. 2d 210; Pompilio v. McGeory, 283 App. Div. 826; Becker v. Slingerland, 282 App. Div. 1106; Parsons v. Great Atlantic & Pacific Tea Co., 233 App. Div. 195; Zimmer v. Lehnert, 135 Misc. 270; Kinsey v. William Spencer & Son Corp., 165 Misc. 143, affd. 255 App. Div. 995, affd. 281 N. Y. 601.)
Latently, where disproportionate amounts ($5,000 to severely injured wife and $5,000 for her husband’s loss of wife’s services) show that the issue of contributory negligence was resolved by sympathy and a compromise verdict. (McGlyn v. Johnson, 15 Misc 2d 881, where the accident was materially contributed to by female plaintiff, and the verdict, dispite its substantial size, $25,000, was, when contrasted with verdicts in like suits, inadequate; Resto v. Metropolitan Distrs., 1 Misc 2d 889, where the very amount of the verdict, in the light of the injuries and special damages if plaintiff’s evidence were to be believed, is confirmation of the fact that the jury’s sympathy brought forth a compromise verdict [medical testimony confirmed plaintiff’s serious and permanent injuries — verdict, $35,000], which constitutes sufficient reason to set aside verdict; Deem v. Hotel Greenwich Corp., 21 Misc 2d 702.)
The verdict rendered in this case is neither irreconcilably inconsistent (supra) nor are the amounts so disproportionate on all the evidence in this case as to warrant a finding that the same was compromised.
A verdict is the result of a trial by jury of issues of fact presented by the pleadings (plus testimony and evidence), and it is proper for jurors to harmonize their views and reach a verdict with proper regard for each other’s opinions.
There was nothing in the foreman’s report of the verdict, as rendered, which indicates that it was not the result of sound *5 judgment, dispassionate consideration and conscientious reflection. Moreover, since the jurors, individually polled, answered affirmatively whether foreman’s report of same meant that they had unanimously found a verdict in favor of the plaintiffs, as indicated {supra), and verdict was accordingly so recorded, the verdict so recorded was the only verdict and foreman’s statement reporting as to how or in what manner it was found was not the verdict. And also, there was no indication in this case, either in considering the record, the verdict itself or its rendition, that the jury had decided by lot whether the verdict shall have been for the plaintiff or the defendant. (Mitchell v. Ehle, 10 Wend. 595.)
Defendant also urges the setting aside of the verdict on the ground that it had been “ averaged.”
Although this is not an issue of first impression, there is a dearth of cases on the specific and pivotal question involved. It therefore behooves the court to ascertain the attitude of other courts and their analysis and disposition of the point involved.
A ‘ quotient verdict ’ ’ is nothing more than a verdict by chance, is illegal, and must be set aside. (North Tex. Producers Assn. v. Jenkins, 342 S. W. 2d 192, 195 [Tex. Civ. App.].) It is one resulting from agreement whereby each juror writes down amount of damages to which he thinks party is entitled and such amounts are then added together and divided by number of jurors. (Index Drilling Co. v. Williams, 242 Miss. 775. See, also, Haarberg v. Schneider, 174 Neb. 334.) However, as an essential element of “ quotient verdict,” jurors must agree to be bound by the quotient. (Wilson v. Gardner, 10 Utah 2d 89.) It is not the setting down of an amount by each of the jurors as to what he thought was fair and reasonable to award plaintiff under the circumstances as damages that is objectionable or improper. (See Killion v. Dinklage, 121 Neb. 322; Hoffman v. City of St. Paul, 187 Minn. 320, Ann. 86 A. L. R. 203; Zook v. State Highway Comm., 156 Kan. 79; Balkwill v. City of Stockton, 50 Cal. App. 2d 661; State ex rel. Senter v. Cowell, 125 Mo. App. 348; Murphy v. Cordle, 303 Ky. 229; Harris v. State, 241 Ala. 240.) It is rather the advance agreement to be bound by average and adherence to such agreement after a quotient is arrived at that renders the verdict illegal. (See Klein v. Swift & Co., 248 Iowa 563. Also, Zanos v. Great Northern Ry. Co., 60 Mont. 37; Stadium Cab Co. v. Shawd, 12 Ohio Law Abstract 106, 36 Ohio Law Rep. 456; Harris v. State, supra; Kelly v. Rainelle Coal Co., 135 W. Va. 594; Killion v. Dinklage, supra; Hoffman v. City of St. Paul, supra; Moses v. Central Park, etc. R. R. Co., 3 Misc. 322; Spain v. *6 Oregon & Washington R. & N. Co., 78 Ore. 355; City of Dothan v. Hardy, 237 Ala. 603; Larson v. Wisconsin Ry., Light & Power Co., 138 Minn. 158; St. Louis & San Francisco R. R. Co. v. Brown, 45 Okla. 143; Miller v. Blue Ridge Transp. Co., 123 W. Va. 428; Benjamin v. Helena Light & Ry. Co., 79 Mont. 144, 52 A. L. R. 33.)
So that the test is whether the jury agreed beforehand to be bound by the result of the arithmetic. (See Fortson v. Hester, 252 Ala. 143.) Therefore, a “quotient verdict ”— that is, a verdict based upon the average judgment of all the jurors — is not illegal, where it does not affirmatively appear that there was an agreement beforehand to abide by the average of the amounts the jurors were in favor of awarding. (State ex rel. Senter v. Cowell, supra.) The legal presumption is that no such arrangement was made. Thus, a party objecting to the verdict on the ground that it was a quotient verdict must show that it was arrived at by improper means, in that the jury in advance agreed upon a method, and agreed to be bound by the result. (Bank of Tallahassee v. Elmore Fertilizer Co., 16 Ala. App. 465.) And, the failure to elicit such evidence or evidence tending to show agreement by jurors to abide by result of any calculations with regard to total vote of individual members warranted refusal of new trial on theory that jury had rendered a “ quotient verdict”. (Sanders v. State, 243 Ala. 691.) In the case of Claggett v. Phillips Petroleum Co. (150 Kan. 191) all the jurors agreed that the plaintiff was entitled to recover for injuries, but there was some dispute as to the amount; the amount that various jurors thought the plaintiff should receive as damages was set down and then divided by 12; but the jurors had not agreed, prior to the setting down of their respective amounts and a division of the total amount, that the quotient should constitute their verdict. Under these circumstances, the court decided that the verdict so reached did not constitute a “quotient verdict ’ ’ which would entitle defendant to a new trial. It therefore appears, and the authorities seem to hold, that in order for a money verdict to be brought within the meaning of a “ quotient verdict ’ ’, and therefore illegal, it must appear that there was an agreement by the jurors that their finding should be determined by the quotient resulting from the division of the sum of the estimates of each juror divided by the number of jurors. It is not enough that the quotient be arrived at in the manner indicated (the foreman reported that his verdict had been “ averaged ” in this case), but in addition thereto there must be proof of an agreement among the jurors that the verdict be determined in said manner (which was totally *7 lacking in this case). (See Pushcart v. New York Shipbuilding Co., 85 N. J. L. 525; also, Dana v. Tucker, 4 Johns. 487.)
Realistic reflection forbids indulging in the vagary that the 12 good men and true who walk into a jury room to evaluate pain and suffering can do so objectively and by application of any common norm or reason. We can arrive at no other conclusion but that a great deal of “ arithmeticking ” goes on in the jury room in situations of this kind. For the determination of each member of the jury is susceptible to and influenced by his own individual experiences relative to pain and suffering and to his own ability to sustain, endure and tolerate it. Some may be impervious to it, and at the hands of these jurors, the plaintiff may not fare too well; others may be highly susceptible and sensitive to it, and at the hands of these jurors the defendant may not fare too well. Each is individually affected thereby and the same becomes patent, is a determinative and controlling factor and is reflected in their dollar evaluation of the same.
To anticipate each of the individual jurors to come forth and produce an identical dollar evaluation for pain and suffering under these circumstances borders on folly and fantasy. The only test to be applied to the legality of such verdicts has been stated above. As was stated by Herrick, J., in the case of Hamilton v. Owego Water Works (22 App. Div. 573, 578, obiter dictum, affirmed on appeal on other issues 163 N. Y. 562): “If every juror persisted in voting for the exact amount he thought was proper to be awarded, we would very seldom reach a verdict in the class of damage cases I have referred to.” The learned jurist was referring to cases involving the recovery of unliquidated damages.
The court has considered the other grounds urged on the motion for setting aside this verdict and for a new trial and finds no sufficient reason in them to grant it. Motion denied.