William Kapelman, J.
Defendant moves to set aside the jury’s verdict in favor of the infant plaintiff Jonathan Klein for personal injuries in the sum of $40,000, as contrary to the law and the evidence, excessiveness, and further, that such verdict is a compromise verdict.
The infant was injured in a two-car collision while a passenger in his father’s automobile. The infant recovered against the driver of the other car, but verdicts by a 10 to 2 vote were returned by the jury both against the infant’s mother as the *591 driver of the car in which the Klein family was riding, in her action for personal injuries and against the father, the owner of the car, present at the accident as owner-passenger, in his actions for personal injuries, loss of his wife’s and the infant’s services, and for property damage to his car. By their verdict against the infant’s parents in their various causes of action against the driver of the other vehicle and in favor of the infant, the jury has clearly indicated their decision as to "both operators’ negligence. This was fully consistent with the evidence that the jury might find for the infant under the facts as adduced, being mindful of the court’s charge as to the two and one-half-year-old infant being non sui juris and free from contributory negligence as a matter of law (Leonard v. Home Owners’ Loan Corp., 270 App. Div. 363, affd. 297 N. Y. 103; see, also, Reilly v. Shapmar Realty Corp., 179 Misc. 614, revd. 267 App. Div. 198). The negligence of the parents having been determined by the jury, it could not be imputed to the infant (General Obligations Law, § 3-111; Van v. Clayburn, 21 A D 2d 144; De Marco v. City of Albany, 17 A D 2d 250). The verdict as rendered is not, therefore, inconsistent or contrary to law.
As to whether the verdict was excessive, we note that the infant suffered a fractured skull, a cerebral concussion, and post-concussion syndromes as a permanent injury. Based upon the testimony of the parents and the neurosurgeon as to the injury sustained, its course, its present condition, and prognosis, the court finds that the verdict was not excessive. We shall now proceed to consider the other contentions that the verdict was compromised.
It has long been established that a verdict which is arrived at by compromise and is unsupported by the evidence will not be permitted to stand. However, unless it is clear that under no rational process could the jury have arrived at the a!mount of damages they found, their verdict should not be overturned for the reason that they reached a compromise on the extent of damages (Witkin v. City of New York, 3 A D 2d 720; Kelikian v. Feinberg, 118 N. Y. S. 2d 641). As in every case, the deliberations of the jurors are secret and are considered sacrosanct in our form of jurisprudence. Ordinarily, they cannot be shown by jurors’ testimony nor can the jury room be invaded to prove that the verdict was indeed a compromise.
The defendant here seeks to prove the compromise nature of the verdict from the writings on a yellow legal cap pad which was returned with the trial exhibits furnished to the *592 jury to the courtroom at the termination of the jury’s deliberations. In addition, defendant contends that the fact that the jury had at one point stated that it was deadlocked on the issue of damages only, and after receiving certain additional instructions from the court returned a verdict within 15 minutes, proves that the verdict was arrived at without true deliberation but by improper compromise.
A verdict should not be set aside because it is a result of a compromise upon the question of damages only, where damages are not liquidated or the subject of mathematical calculation (Hamilton v. Owego Water Works, 22 App. Div. 573, affd. 163 N. Y. 562).
As was noted, the verdicts rendered in this ease are neither irreconcilably inconsistent nor is the amount so disproportionate on all the evidence as to warrant a finding that the same was compromised on the question of liability.
We now get to the crux of the matter, whether or not the verdict rendered in favor of the infant plaintiff Jonathan Klein in the sum of $40,000 was, as defendant contends, a “ quotient verdict ”. The sole proof as to this contention was the “ yellow legal cap pad ’ ’ found as above described. On this pad there were written the numbers 1 through 12 with a dollar amount alongside each number; the total of the figures was set forth as $460,000. The writing further had the total amount $460,000 divided by 12. The quotient was written as $40,000, a figure which though not the precise quotient is close to such sum.
The law is well settled that quotient verdicts are invalid, improper, illegal and must be set aside (Harvey v. Rickett, 15 Johns. 87; see, also, North Tex. Producers Assn. v. Jenkins, 342 S. W. 2d 192, 195 [Tex. Civ. App.]; see, also, Honigsberg v. New York City Tr. Auth., 43 Misc 2d 1; see, also, Haarberg v. Schneider, 174 Neb. 334). This is so even if the amount of the verdict is not exactly, but only approximately, the same as the amount of the quotient obtained by the jury (Carter v. Marshall Oil Co., 185 Iowa 416; see, also, Welker v. Union Cent. Life Ins. Co., 6 O. O. 439).
Quotient verdicts have been considered objectionable on the ground that they are reached through a process of chance or gambling and not founded upon discussion, deliberation, reasoning and collective judgment in which each juror has an opportunity for individual participation; this because the jurors who render a quotient verdict agree, without knowing in advance what the quotient will be, to be bound by it and to foreclose the opportunity for further discussion and for comparison and evaluation of individual juror’s positions.
*593 Tiras to show that a quotient verdict has been rendered, one of the essential elements to be established is that the jurors, through an antecedent agreement whether express or tacit, had bound themselves to abide by the results of the quotient process, dispensing with collective discussion, deliberation, and reasoning. This is the crucial test (Honigsberg v. New York City Tr. Auth., 43 Misc 2d 1; see, also, Fortson v. Hester, 252 Ala. 143). But, if the jurors, although bound initially, subsequently abandoned their agreement to be bound by the quotient or if the use of the quotient process was merely experimental and was never intended or assumed to be binding on any of the jurors, the verdict is not invalid (Johnson v. Northern Pacific Ry. Co., 46 F. 347).
Therefore, a verdict that is based upon the average judgment of all the jurors, is not illegal where it does not affirmatively appear that there was an agreement beforehand to abide by the average of the amount the jurors were in favor of awarding.
The legal presumption is that no such arrangement was made (State ex rel. Senter v. Cowell, 125 Mo. App. 348; see, also, Honigsberg v. New York City Tr. Auth., 43 Misc 2d 1, supra). Further, the party objecting to the verdict on the ground that it is a “ quotient verdict ” must show that it was arrived at by improper means, to wit, that the jury in advance agreed upon a method, and agreed to be bound by the result (Bank of Tallahassee v. Elmore Fertilizer Co., 16 Ala. App. 465; see, also, Claggett v. Phillips Petroleum Co., 150 Kan. 191).
The prevailing view appears to be that even where evidence of papers and figures is presented establishing that the jury may have used the quotient process, such evidence does not, in itself, warrant the presumption that the jury had ultimately rendered a quotient verdict (Farmer & Co. v. Hooks, 239 F. 2d 547, cert. den. 353 U. S. 911; see, also, Lund v. Kline, 133 Ohio St. 317; 10 O. O. 411).
Further a verdict in favor of the plaintiff will not be set aside where the jury voted that defendant was liable and then proceeded, to average the amount suggested by the jurors and finally agreed on a definite amount (Van Siclen v. Bush, 168 Misc. 878, Mod. 254 App. Div. 851, affd. 279 N. Y. 753).
Finally, that which occurred in the courtroom when the verdict was rendered is of the greatest importance. After the jury had announced its verdict, each juror was individually polled on each cause of action. The vote was 10 to 2 in favor of the infant Jonathan Klein’s cause of action, and one of the dissenting jurors (Juror No. 4) voluntarily stated when polled *594 as follows: “ Your Honor, may I ask a question? I find for the plaintiff but not for the sum ’ This would indicate that 11 jurors found in favor of the infant plaintiff as to liability, and that the jurors had not entered into an antecedent agreement to be bound by the quotient process. There was still another dissent, not identifiable whether as to liability and/or damages or both, again indicating no antecedent agreement since 12 figures were included in the total sum of $460,000, and these two jurors dissented from the $40,000 verdict. Had there been an agreement, presumptively there would have been no dissents.
It is well known that a general verdict is an individual entity and it cannot be readily separated into its component elements (see 89 C. J. S., Trial, § 485, p. 138). Hence, in a negligence case, a general verdict requires each jury, comprising at least 10 of the jurors, to report a verdict on a combination of issues of liability and damages as a single entity. In this case this was done.
The court, in questioning the jury relative to the ‘ ‘ yellow legal cap pad ”, said “ Was this sum finally arrived at on the cause of action of Richard Klein as guardian ad litem of infant Jonathan Klein for his personal injuries of $40,000; was that sum agreed to then by ten members of the Jury? ” The foreman of the jury responded “ Yes, it was ”. Immediately thereafter Juror No. 2 voluntarily stated: “ No it wasn’t. The first time it wasn’t.” The fact that this statement was made by Juror No. 2 would again tend to negate the theory that there had been a prior agreement to accept the quotient as their verdict in advance of the vote. Further, it has been held that the subsequent polling of the jury and their separate answers relieved the verdict from all objections as a quotient verdict (Lee v. Clute, 10 Nev. 149; Moses v. Central Park & East Riv. R. R. Co., 3 Misc. 322).
Upon reflection, it is inescapable that in our system of trial by jury, involving civil oases in which nonliquidated damages are involved, that the jury uses arithmetic means in an attempt to reach their collective judgment to fix the amount to be awarded. To expect that each individual juror would agree and produce an identical monetary evaluation for pain and suffering would be totally unrealistic.
Upon the evidence presented, the court finds that the defendant has failed to meet his burden of establishing that the sum returned here was truly a 1 ‘ quotient verdict ’ ’. Accordingly, defendant’s motion to set aside the verdict herein is, in all respects, denied.