301 S.E.2d 210

**Chester KIMBALL, Jr., et al.**

v.

**Carl WALDEN, et al.**

No. 15403.

Supreme Court of Appeals of West Virginia.

March 14, 1983.

Musgrave, Musgrave & Casey and James M. Casey, Point Pleasant, for appellants.

Shaw & Stein and Ronald F. Stein, Point Pleasant, for appellees.

McGRAW, Chief Justice:

This case comes on appeal from the final order of the Circuit Court of Mason County which set aside the jury verdict rendered in favor of the appellants, Chester Kimball, Jr. and Judy Kimball, in the civil action below and awarded the appellees, Carl Walden and Sally Walden, a new trial. The motion for a new trial was granted on the ground that the verdict was an improper quotient verdict. The major issue raised

by the appellants is whether there was sufficient evidence to warrant the lower court's decision to set aside the verdict. We do not believe the evidence was sufficient, and we reverse the ruling of the circuit court.

The material facts of this case are not in dispute. The Kimballs purchased a home located in Gallipolis Ferry, Mason County, from the Waldens. Sometime thereafter a dispute arose between the parties, and the Kimballs instituted an action for damages in the Circuit Court of Mason County, alleging that the Waldens had made certain misrepresentations and had committed breaches of warranties in selling the house. A trial on this matter was conducted before a jury beginning November 17, 1980. On November 19, 1980, the jury returned a verdict in favor of the Kimballs in the amount of $7,541.00.

On December 3, 1980, counsel for the Waldens filed a motion to set aside the verdict and to grant a new trial. The motion assigned numerous grounds, including the allegation that the jury had improperly arrived at a quotient verdict. A hearing was held on the motion on December 11, 1980, at which time all parties were afforded the opportunity to submit exhibits and memoranda of law. After considering the evidence, the circuit court, by order entered January 14, 1981, granted the Waldens' motion to set aside the verdict and ordered a new trial, all on the ground that the jury had rendered a quotient verdict in the previous trial. It is from this order that the Kimballs appeal.

█ As a preliminary matter, the appellants assert that the circuit court was without authority to order a new trial in that the motion for a new trial was not timely filed in accordance with the requirements of Rule 59(b) of the West Virginia Rules of Civil Procedure, which provides: "A motion for a new trial shall be served not later than 10 days after the entry of judgment." We note, however, that there is no evidence in the record before this Court indicating when the judgment was entered. In the absence of evidence to the contrary, a court having the power to act in a particular case is presumed not to have acted without jurisdiction. *State ex rel. Conley v. Thompson,* 100 W.Va. 253, 130 S.E. 456 (1925). The presumption is that the court acted regularly and with authority, and the burden is on the party alleging irregularity to show affirmatively that such irregularity exists. *Forest Glen Land Co. v. George,* 96 W.Va. 209, 122 S.E. 543 (1924). Since the appellants presented no evidence that the motion for a new trial was not properly filed and served within 10 days after the entry of judgment, we must assume that the circuit court acted properly in hearing and deciding the matter.

█ The appellants' principal assignment of error is that the circuit court erred in finding that the jury returned an improper quotient verdict. A "quotient verdict" is rendered in a civil action when, in accordance with a prior agreement among the jurors, (1) each juror specifies the amount of damages he would award, (2) these amounts are added together and the aggregate is divided by the number of jurors, and (3) the jurors accept the quotient thus obtained as their verdict.[1] *See generally,* 76 Am.Jur.2d *Trial* § 1135 (1975); 89 C.J.S. *Trial* 472 (1955). *See also Kelly v. Rainelle Coal Co.,* 135 W.Va. 594, 64 S.E.2d 606 (1951); *Miller v. Blue Ridge Transportation Co.,* 123 W.Va. 428, 15 S.E.2d 400 (1941). The vice which renders a quotient verdict invalid is not the use of the arithmetic formula, but, rather, the advance agreement of the jurors to be bound by the result of the formula before it is known to them, thus foreclosing all subsequent discussion, deliberation or dissent on the issue of damages. *Miller v. Blue Ridge Transportation Co., supra. See also Freight*

---

1. In at least one jurisdiction the term "quotient verdict" is not used in this manner. In Arkansas, the result of the jury's prior agreement to be bound by the figure ascertained by the use of the quotient process is called a "verdict by lot"; "quotient verdict" connotes a valid use of the quotient process by the jury without prior agreement and is not improper. *National Credit Corp. v. Ritchey,* 252 Ark. 106, 477 S.W.2d 488 (1972); *Arkansas State Highway Comm'n v. Vandiver,* 240 Ark. 26, 397 S.W.2d 802 (1966).

*Terminals, Inc. v. Ryder System, Inc.*, 461 F.2d 1046 (5th Cir.1972); *Morrison v. Kansas City Coca-Cola Bottling Co.*, 175 Kan. 212, 263 P.2d 217 (1953); *Lund v. Kline*, 133 Ohio St. 317, 10 Ohio Op. 411, 13 N.E.2d 575 (1938); *State ex rel. Highway Comm'n v. Center*, 23 Or.App. 693, 543 P.2d 1084 (1975). It has been suggested that the jurors' agreement to accept the unascertained figure as the verdict smacks of casting lots and results in a verdict which does not represent an intelligent, reasoned and deliberate judgment by the jury. *Johnson v. Haupt*, 5 Kan.App.2d 682, 623 P.2d 537 (1981); *Reick v. Great Northern Ry. Co.*, 129 Minn. 14, 151 N.W. 408 (1915); *Index Drilling Co. v. Williams*, 242 Miss. 775, 137 So.2d 525 (1962); *Killion v. Denklage*, 121 Neb. 322, 236 N.W. 757 (1931); *Klein v. Eichen*, 63 Misc.2d 590, 310 N.Y.S.2d 611 (1970); *Sunset Brick & Tile, Inc. v. Miles*, 430 S.W.2d 388, 389 (Tex.1968).

▆ Thus, the essential element of an invalid quotient verdict is the antecedent agreement of the jurors to be bound by the unascertained result of the averaging process. If the jurors, or anyone of them, use the quotient process experimentally or as a means of arriving at a "ball park figure" of damages without any agreement to be bound by such figure, and, after further discussion and deliberation, agree to the amount thus ascertained as a just and reasonable measure of damages, their verdict may not be set aside as an improper quotient verdict. *Miller v. Blue Ridge Transportation Co., supra. See also Fruehauf Trailer Division v. Thornton*, 174 Ind. App. 1, 366 N.E.2d 21 (1977); *Blevins v. Al Weingart Truck & Tractor Service, Inc.*, 186 Kan. 258, 349 P.2d 896 (1960); *Landreth v. Reed*, 570 S.W.2d 486 (Tex.Civ. App.1978); *Moses v. Cromwell*, 78 Va. 671 (1884).[2]

▆ The existence of a prior agreement among the jurors to be bound by the

result of the computations must be affirmatively shown by the party seeking to overturn the verdict. As a general rule, a strong presumption of regularity attaches to every step of a civil proceeding, including jury deliberations, and the burden is on the party seeking a new trial to show affirmatively that irregularity exists. *Forest Glen Land Co. v. George*, 96 W.Va. 209, 122 S.E. 543 (1924). *See also State v. Scotchel*, 168 W.Va. 545, 285 S.E.2d 384 (1981); *West Virginia Human Rights Commission v. Tenpin Lounge*, 158 W.Va. 349, 211 S.E.2d 349 (1975); *State v. Sams*, 158 W.Va. 310, 210 S.E.2d 916 (1975); *State ex rel. Massey v. Boles*, 149 W.Va. 292, 140 S.E.2d 608 (1965); *State ex rel. Ashworth v. Boles*, 148 W.Va. 13, 132 S.E.2d 634 (1963); *Malone v. Monongahela Valley Traction Co.*, 105 W.Va. 60, 141 S.E. 440 (1928). Misconduct or irregularity on the part of the jurors must be affirmatively shown by the party alleging such misconduct or irregularity.

The evidence adduced at the hearing below consisted of several affidavits and two exhibits. The affidavit of trial counsel for the appellees stated that immediately following the rendition of the verdict on November 19, 1980, he and another individual entered the room in which the jury had conducted its deliberations and found there a pad of yellow paper and several crumpled scraps of paper. Written on several small scraps of paper, which are not in the record before us, were numbers such as 6700, 6500 and 7000. Counsel also found two larger pieces of paper, which are attached as exhibits to the motion for a new trial. One of these papers appeared to contain a drawn representation of the house which was the subject of the legal action below. On the other piece of paper were mathematical calculations. The number 6700 was multiplied by 7 to yield a product of 46,900. To this number were added the numbers 30,000, 6500, and 7000 to produce

---

**2.** It has also been held that where the jury enters into an agreement to be bound by the quotient figure and subsequently abandons its agreement in favor of further discussion and deliberation, the verdict thus rendered is not an illegal quotient verdict if the jury adopts such amount as their verdict independent of the prior agreement. *Graham v. Commonwealth*, 310 Ky. 773, 221 S.W.2d 677 (1949); *Willey v. Belfast*, 61 Me. 569 (1873); *Klein v. Eichen, supra. But see, Klein v. Swift & Co.*, 248 Iowa 563, 81 N.W.2d 469 (1957).

a sum of 90,400. This figure was then divided by 12 to yield a quotient of 7541. This figure corresponds exactly to the amount of the jury's verdict in favor of the appellants. Counsel also stated that the civil action involving these parties was the only trial being conducted in the Mason County Courthouse on November 19, 1980, and that the jury selected in that case was the only jury to occupy the room in which the papers were found. The appellees also produced the affidavit of three custodians employed at the Mason County Courthouse, who stated that during the trial they cleaned the jury room each and every day before the jury began a new day of deliberations, removing from the jury room all loose papers and trash.

The appellants admit that the evidence shows that the jury used the quotient process at some point during their deliberations. The question they present to us is whether that showing and the fact that the verdict rendered corresponds exactly to the quotient figure shown by the papers are sufficient to establish a prior agreement among the jurors to be bound by that figure. In *Kelly v. Rainelle Coal Co.*, 135 W.Va. 594, 64 S.E.2d 606 (1951), this question was answered in the affirmative. Faced with a fact situation similar to the one presented by this case, the Court in *Kelly* concluded:

> An examination of the record herein discloses beyond peradventure that the jurors in this case reached their verdict by adopting a quotient resulting from division of $186,500.00 by twelve. It is true that there is no direct proof that the jurors agreed to be bound by the results of such calculation prior to the finding of the verdict. But the facts are so clear and the result so plain that no inference can be drawn other than that the jurors who returned this verdict were actually bound by the result of the mathematical calculation. The quotient shown by the papers found in the jury room is the

exact amount of the verdict. The return of a quotient verdict should not go unnoticed where the proof is so clear, and the inference so plain that the contrary cannot be supposed. 135 W.Va. at 603, 64 S.E.2d at 613.

In effect, the Court in *Kelly* held that a showing that the jury used the quotient process at some point in their deliberations, and returned a verdict in the exact amount of the figure thus obtained, as evidenced by papers found in the jury room, gives rise to a presumption that the jurors employed the quotient process in conjunction with a prior agreement to be bound by such figure. The circuit court in this case relied exclusively upon the holding in *Kelly* in awarding the appellees a new trial.

The prevailing view in other jurisdictions, however, is that evidence of papers or memoranda showing that the jury used the quotient process at some point during their deliberations is not sufficient, of itself, to establish an antecedent agreement of the jurors to be bound by the result of the computation. *Anno.* 8 A.L. R.3d 355, 365 (1966); 76 Am.Jur.2d *Trial* § 1137 (1975). In only one other jurisdiction, Alabama, does evidence of papers showing that the jury used the quotient process at some point in their deliberations and returned a verdict in that amount give rise to a presumption that there was an advance agreement to return an improper quotient verdict. *Alabama Power Co. v. Thomas*, 50 Ala.App. 517, 280 So.2d 778 (1973); *George's Restaurant v. Dukes*, 216 Ala. 239, 113 So. 53 (1927).[3]

We believe the prevailing view on this issue is the correct one. The evidence adduced at the hearing below is no proof of misconduct. It shows only that someone on the jury used the quotient approach at some stage of the deliberative process. As we have already noted, there is nothing inherently evil in the use of such computations.[4] A showing that the verdict actually returned corresponded exactly to the figure

---

**3.** Evidence of papers showing a quotient which corresponds to the verdict and which is shown to be the work of the jurors establishes a prima

facie case that the jury improperly rendered a quotient verdict. *Security Mutual Finance Corp. v. Harris*, 288 Ala. 369, 261 So.2d 43 (1972).

584

ascertained as a result of the averaging process does not fulfill the burden of the appellees to show affirmatively a prior agreement to be bound by that result. A fugitive memorandum showing mathematical calculations does not "raise even a bare suspicion that the verdict was arrived at in an irregular way ...." *Moses v. Cromwell,* 78 Va. at 675. Even if we were to hold that such evidence may prompt a suspicion of improper conduct, the inference that the jury reached a proper determination of the issue of damages is just as likely and as consistent with the facts shown below. In such circumstances, the doubt should be resolved in favor of the jury's verdict. *Hudson v. West Central Drilling Co.,* 195 S.W.2d 387 (Tex.Civ.App. 1946).

Consequently, we conclude that evidence of papers or memoranda showing that the jury used the quotient process at some point during their deliberations and returned a verdict in the amount of the resulting quotient is not, of itself, sufficient to establish that the verdict was the result of a prior agreement among the jurors to be bound by the result of the computation. To the extent the decision in *Kelly v. Rainelle Coal Co., supra,* is inconsistent with this holding, it is hereby overruled.

In view of our resolution of this case we need not reach the final issue raised by the appellants as to whether the new trial should be limited only to the question of damages. The order of the Circuit Court of Mason County setting aside the jury verdict in the civil action below and granting a new trial is reversed and the case is remanded to that court for reinstatement of the jury verdict.

Reversed and remanded.

---

4. Indeed, the use of the averaging process may be not only proper, but desirable as well. As the New York Supreme Court has stated:

> [I]t is inescapable that in our system of trial by jury, involving civil cases in which non-liquidated damages are involved, that the jury uses arithmetic means in an attempt to reach their collective judgment to fix the amount to be awarded. To expect that each individual juror would agree and produce an identical monetary evaluation ... would be totally unrealistic.

*Klein v. Eichen,* 63 Misc.2d at 594, 310 N.Y. S.2d at 617.