838 F.2d 467
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
OTIS ELEVATOR COMPANY, Plaintiff-Appellee,
v.
COYLE REALTY COMPANY, Defendant-Appellant.
 No. 87-1568.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 1, 1987.
Decided: Jan. 14, 1988.
 
 William Edward Mohler, II for appellant.
 Joseph R. Goodwin (Richard D. Owen; Goodwin & Goodwin, on brief), for appellee.
 Before HARRISON L. WINTER, Chief Judge, JAMES DICKSON PHILLIPS, Circuit Judge, and BUTZNER, Circuit Judge.
 PER CURIAM:
 
 
 1
 Invoking diversity jurisdiction, Otis Elevator Company (Otis) sued Coyle Realty Company (Coyle) for breach of a ten-year elevator maintenance agreement with Otis. The jury awarded Otis $16,883.34 in damages. Coyle moved for a judgment notwithstanding the verdict or a new trial, arguing, inter alia, that Otis did not meet its burden of proof on damages, that the jury was improperly coerced, and that the jury returned an illegal quotient verdict. The district court denied Coyle's motions. Coyle appears and we affirm.
 
 I.
 
 2
 On June 22, 1984, Coyle's president informed Otis that Coyle was cancelling its contract with Otis for the maintenance of two elevators in a West Virginia building owned by Coyle. It declared an effective cancellation date of September 30, 1984, which was the end of the fifth year of the ten-year maintenance agreement. Otis filed suit seeking damages for lost profits under the contract.
 
 II.
 
 3
 We reject Coyle's argument that the jury was not provided with sufficient credible evidence on projected lost profits and therefore was forced to speculate as to damages. Through the testimony of Otis' area manager and the admission into evidence of Otis' cost analysis sheets, Otis presented evidence that it would lose $25,325 in profits due to Coyle's repudiation. Coyle had the opportunity to contest vigorously the area manager's testimony on his derivation of this projection and Coyle was free to present contrary evidence. In fact, Coyle did cross-examine Otis' area manager on some aspects of the witness' calculations, and the jury awarded Otis less than its projections. In our view the jury surely had an adequate basis on which to award damages of $16,883.34.
 
 III.
 
 4
 The district court conducted a posttrial inquiry into Coyle's assertions that the jury was improperly coerced or subjected to undue influence. The jury foreman testified that the bailiff physically pushed him back into the jury room, and that the jury was forced to deliberate after it had clearly reached an impasse as if a verdict were a condition of release from "prison." The foreman's testimony was contradicted by several witnesses at the posttrial hearing. The law clerk of the judge presented uncontroverted testimony that when she told the foreman that the presiding judge would declare a mistrial and dismiss the jury, he requested additional time for deliberation. The five other jurors testified that no outside influence was improperly brought to bear upon them. The district court did not clearly err in finding that the jury was not properly influenced or coerced.
 
 IV.
 
 5
 Lastly, Coyle contends that the jury returned an illegal quotient verdict. It notes that the six-person jury returned an award of exactly two-thirds of Otis' alleged $25,325 in damages, and that this apparently reflects a four-two split among the six jury members. Under Rule 606(b) of the Federal Rules of Evidence, statements by the jury foreman as to how the jury arrived at its damages award cannot generally be used to attack the validity of the verdict. Even if there were admissible evidence that the jury reduced Otis' profit projections by two-thirds to reflect an average of the six jurors' individual damages estimates, that would not in itself be an illegal quotient verdict. A jury is free to perform the arithmetic operation of division in the course of its deliberations. It can factor in disparate views in arriving at a tentative number. What a jury may not do is enter into an antecedent agreement to be bound by an undetermined result of an averaging process. See, e.g., Kimball v. Walden, 301 S.E.2d 210, 213-15 (W.Va.1983). Coyle offers no evidence that the jury's verdict was the result of such an agreement, and hence its claim that the jury rendered an illegal quotient verdict is unsupported.
 
 
 6
 AFFIRMED.